UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUDY ANNE BEAR,<br><br>        Plaintiff,<br><br>        v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>        Defendant. | CIVIL ACTION NO. 3:19-CV-01414<br><br>(MEHALCHICK, M.J.) |

**MEMORANDUM**

Plaintiff Judy Anne Bear brings this action under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. (Doc. 1). The matter was referred to the undersigned United States Magistrate Judge to prepare a report and recommendation pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b). The parties thereafter consented to the undersigned's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1), to adjudicate all proceedings related to this action. (Doc. 17).

For the following reasons, the Court will affirm the Commissioner's decision to deny Bear benefits, direct final judgment in favor of the Commissioner, and direct the Clerk of Court to close this case.

I. **BACKGROUND AND PROCEDURAL HISTORY**

In June 2012, Bear protectively filed an application for Title II disability insurance benefits, claiming disability beginning May 11, 2012, due to kidney transplant, memory loss, depression, high blood pressure, anxiety attacks, and sleep apnea. (Doc. 12-2, at 13; Doc. 12-

7, at 14). The Social Security Administration initially denied the application on October 15, 2012, and Bear filed an untimely written request for hearing on February 12, 2013. (Doc. 12-2, at 13). Good cause was found for the late filing and Bear's request for a hearing was not dismissed. (Doc. 12-2, at 13). Bear appeared and testified at a video hearing held on May 8, 2014. (Doc. 12-2, at 13). In a written decision dated July 22, 2014, the ALJ determined that Bear was not disabled and therefore not entitled to benefits under Title II. (Doc. 12-2, at 13).

Upon request for appellate review, the Appeals Council (AC) vacated the hearing decision and remanded Bear's claim for further administrative proceedings. (Doc. 12-2, at 13). The AC directed the ALJ to: (1) obtain additional evidence concerning Bear's impairments, (2) give further consideration to Bear's maximum residual functional capacity, (3) evaluate non-treating source opinions, and (4) obtain supplemental evidence from a vocational expert. (Doc. 12-2, at 13). The ALJ states that he complied with the AC directive, obtaining additional evidence in the form of updated medical treatment notes and multiple third-party statements. (Doc. 12-2, at 13). A video hearing was held on February 22, 2018. (Doc. 12-2, at 13). After the second hearing, the ALJ again determined, in a June 1, 2018, written decision, that Bear was not disabled and therefore not entitled to benefits under Title II of the Act. (Doc. 12-2, at 25). Bear requested review of the ALJ's decision, which the AC denied on June 17, 2019. (Doc. 12-2, at 2-4).

On August 15, 2019, Bear commenced the instant action. (Doc. 1). The Commissioner responded on March 30, 2020, providing the requisite transcripts from Bear's disability proceedings. (Doc. 11; Doc. 12). The parties then filed their respective briefs (Doc. 16; Doc. 18; Doc. 19), with Bear alleging one principal ground for reversal or remand. (Doc. 16, at 4).

II. **STANDARDS OF REVIEW**

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy.[1] 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). Additionally, to be eligible to receive Title II benefits, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131. To establish an entitlement to disability insurance benefits under Title II, the claimant must establish that he or she suffered from a disability on or before the date on which they are last insured.

A. **ADMINISTRATIVE REVIEW**

In evaluating whether a claimant is disabled, the "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 404.1512(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(a)(1).

B. JUDICIAL REVIEW

The Court's review of a determination denying an application for Title II benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Bear is disabled, but whether the Commissioner's determination that Bear is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status

of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

### III.   THE ALJ'S DECISION

In his written decision,[2] the ALJ determined that "[Bear] was not under a disability, as defined in the Social Security Act, at any time from May 11, 2012, the alleged onset date, through December 31, 2017, the date last insured." (Doc. 12-2, at 25). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. § 404.1520(a)(4). Initially, the ALJ determined that Bear's "earnings record shows that [she] has acquired sufficient quarters of coverage to remain insured through December 31, 2017." (Doc. 12-2, at 14).

#### A.   STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in substantial gainful activity, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 404.1572(a)-(b). The ALJ must consider only the earnings of the claimant. 20 C.F.R.

---

[2] All references to the ALJ's written decision are to the ALJ's 2018 post-remand decision, which represents the Commissioner's final determination regarding Bear's claim for benefits. (Doc. 12-2, at 13-25)

§ 404.1574(a)(2). Here, the ALJ determined that "[Bear] did not engage in substantial gainful activity during the period from her alleged disability onset date of May 11, 2012 through her date last insured of December 31, 2017." (Doc. 12-2, at 16).

    B.    STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is severe and meets the 12-month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits" the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. § 404.1520(c). If a claimant establishes a severe impairment or combination of impairments, the ALJ considers step three. Here, the ALJ found that Bear had one severe medically determinable impairment: chronic kidney disease and renal failure, status post 2006 kidney transplant. (Doc. 12-2, at 16). The ALJ further determined that while Bear suffered from other medically determinable impairments, none were severe.

    C.    STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. Part 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. § 404.1520(a)(4)(iii). The sections in this appendix are commonly referred to as "listings." Here, the ALJ determined that none of Bear's impairments, considered individually or collectively, met or medically equaled the severity of a listed impairment. (Doc. 12-2, at 18). The ALJ specifically considered Listing 6.00 – genitourinary disorders. (Doc. 12-2, at 18); *see* 20 C.F.R. Part 404, Subpt. P, App. 1 § 6.00.

D.  RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity (RFC), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 404.1529(b)-(c).

Here, based on his consideration of the medical opinions and other relevant evidence in the record, the ALJ determined that Bear had the RFC to perform the full range of medium work as defined in 20 C.F.R. § 404.1567(c) "because [Bear] was able to lift and/or carry fifty pounds occasionally and twenty-five pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday." (Doc. 12-2, at 19).

E.  STEP FOUR

Step four requires the ALJ to determine whether the claimant has the RFC to perform the requirements of their past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is defined as work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). "If the claimant can perform h[er] past relevant work despite h[er] limitations, [s]he is not disabled."

7

*Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). Here, based on testimony adduced from a vocational expert at Bear's administrative hearing, the ALJ determined that through the date last insured, "[Bear] was capable of performing past relevant work as a well point pumping supervisor/office manager…" (Doc. 12-2, at 23).

Because the ALJ found that Bear was capable of performing past relevant work, a determination of "not disabled" was required. *See* 20 C.F.R. § 404.1520(a)(4)(iv). As such, the ALJ concluded that Bear was not disabled and therefore denied her application for benefits. (Doc. 12-2, at 23-25).

## IV. DISCUSSION

Bear challenges the ALJ's classification of her past relevant work. (Doc. 16, at 4-12). She submits that her past relevant work included that of a well drill operator instead of a well point pumping supervisor, as the ALJ found. (Doc. 16, at 4-12). Bear avers that a well drill operator is classified as a heavy job, whereas a well point supervisor is classified as a light job. (Doc. 16, at 6, 11). Because the ALJ determined that Bear was limited to performing medium work, a finding that her past relevant work constituted that of a well drill operator would mean that she would not be capable of performing past relevant work. The Commissioner responds that substantial evidence, including Bear's application and testimony, shows Bear could perform her past work as it was actually performed, thus the ALJ's decision should be affirmed. (Doc. 18).

At step four of the five-step sequential evaluation process, an ALJ must determine whether the claimant is able to do past relevant work, considering his or her residual functional capacity. 20 C.F.R. § 404.1520(b).

This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the

physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Bennett v. Comm'r of Soc. Sec.,* 220 F.3d 112, 120 (3d Cir. 2000).

The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level[,] exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles,* etc., on the requirements of the work as generally performed in the economy.

Soc. Sec. Ruling 82–62, 1982 WL 31386, at *3; *see also* 20 C.F.R. § 404.1520(b)(2).

In evaluating this evidence, the ALJ must consider whether "the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it" or whether "the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." Soc. Sec. Ruling 82–61, 1982 WL 31387, at *1–*2. The DOT may be relied upon "to define the job as it is *usually* performed in the national economy." Soc. Sec. Ruling 82–61, 1982 WL 31387, at *2 (emphasis in original). "[I]f the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job, but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" Soc. Sec. Ruling 82–61, 1982 WL 31387, at *2.

Here, the ALJ first found that Bear retained the RFC to perform the full range of medium work. (Doc. 12-2, at 19). This finding is not at issue. (Doc. 16, at 4). The ALJ next

evaluated the demands of Bear's past relevant work. The ALJ found that Bear's past relevant work was a composite job of a well point pumping supervisor and office manager. (Doc. 12-2, at 23-24). In making this determination, the ALJ cited Bear's statements that she worked as the owner of the well drilling company from 1986 through May 2012, and her duties included overseeing workers and staff, performing office work, dealing with customers, "dealing with issues such as replacing a pump," doing light lifting in the office, and "only carried things a short distance throughout the day." (Doc. 12-2, at 23-24). Additionally, the ALJ identified Bear's testimony that she "ran machines, helped with drilling if necessary, engaged with pump systems, gave estimates, located well sites, tested water, trained others, worked in the field, purchased materials, reviewed invoices, spoke to customers in the office, substituted for secretarial staff if necessary, supervised the office, signed documents, and organized safety meetings." (Doc. 12-2, at 24).

The ALJ used the vocational expert's testimony that Bear's past relevant work consisted of the composite job of well point supervisor and office manager. (Doc. 12-2, at 24). The well point pumping supervisor is generally performed at a light exertional level, but was actually performed at a medium exertional level by Bear. (Doc. 12-2, at 24). The job of office manager is generally and actually performed at a sedentary exertional level. (Doc. 12-2, at 24). Finally, the ALJ compared Bear's RFC and her past relevant work, concluding that Bear retained the RFC necessary to perform the functions of her past relevant work as actually performed because she was limited to work at a medium exertional level through the date last insured, and the demands of the composite job as actually performed do not exceed that level. (Doc. 12-2, at 24).

Both parties agree that Bear's past relevant work was a composite job. Bear contends

that it was a well-drill operator and office manager, while the Commissioner asserts that the ALJ correctly concluded that it was a well point pumping supervisor and office manager. (Doc. 16, at 4-12; Doc. 18, at 10-12). "[C]omposite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT. Such situations will be evaluated according to the particular facts of each individual case." Soc. Sec. Ruling 82–61, 1982 WL 31387, at *2. "To establish that a claimant maintains the RFC to perform past relevant work in a composite job, the evidence must establish that the claimant can perform *each job* within a composite job, whether as actually performed or as generally performed in the national economy." *Boggs v. Colvin*, 2014 WL 1277882, at *10 (M.D. Pa. 2014). An ALJ may not "divide a composite job into two jobs and find the claimant capable of performing past relevant work based on the less demanding of the two jobs." *Boggs*, 2014 WL 1277882, at *10. "To classify an applicant's 'past relevant work' according to the least demanding function of the claimant's past occupations is contrary to the letter and spirit of the Social Security Act." *Valencia v. Heckler,* 751 F.2d 1082, 1086 (9th Cir. 1985); *Byrd v. Sullivan,* Civ. A. No. 88–8425, 1989 WL 38624, at *3 (E.D. Pa. Apr.19, 1989) (citing and paraphrasing *Valencia,* 751 F.2d at 1086). Again, a composite job has no direct counterpart in the DOT, only containing substantial elements, or "main duties," of two or more occupations. SSR 82-61.

For Bear's past relevant work to be appropriately classified as a composite job of well point pumping supervisor and office manager, the ALJ must identify substantial evidence that her past relevant work as actually performed consisted of "main duties" of a well point pumping supervisor at a medium exertional level. *See* SSR 82-61. At her oral hearing, Bear testified to her job duties during the period at issue. (Doc. 12-2, at 95-99). These duties

included reviewing invoices, talking to customers, and "if we needed somebody to put in a pump system, or I was requested to be onsite, I went and did that with another employee…" (Doc. 12-2, at 97-98). Additionally, Bear supervised the office, signed documents, and performed other office work common to a supervisory position. (Doc. 12-2, at 98). Bear specifically testified that she would not "go about setting up the [drilling] rigs," unless an employee did not show up. (Doc. 12-2, at 97). The Vocational Expert (VE), Penny Anderson, testified that the well point pumping supervisor consists of "supervising and coordinating the activities of workers engaged in maintaining pumps and drilling wells." (Doc. 12-2, at 102). Bear testified that on an average day she would lift and carry fifty-pound bags of salt.[3] (Doc. 12-2, at 103). The VE advised that if this were occurring, Bear would be performing the job of well point pumping supervisor at a medium exertional level. (Doc. 12-2, at 100-103).

Bear contends that because her business was drilling residential wells, her past relevant work should include well-drill operator.[4] (Doc. 16, at 6, 8). The well-drill operator "sets up and operates portable drilling rig (machine and related equipment) to drill wells." (Doc. 16, at 7) (quoting DOT 859.362-010). In support of her argument that her past relevant work included that of a well-drill operator, Bear states, "The clear testimony in this case is that the Claimant was the owner-operator of Coudersport Well Drilling and that their business was drilling residential wells…" (Doc. 16, at 8). However, the record shows that from 2003 until 2012, Bear did not perform the duties of a well drill operator, but rather supervised and

---

[3] Bear did not testify to lifting or carrying more than 50 pounds. (Doc. 12-2, at 69-112).

[4] Bear's attempt to use a prior ALJ decision or testimony to discount the validity of the most recent decision or testimony is fruitless because prior ALJ decisions are not binding on subsequent ALJ's, especially if additional evidence is heard. (Doc. 16, at 11); *see Carter v. Barnhart*, 133 F. App'x 33, 35 (3d Cir. 2005).

coordinated employees who carried out the drilling work. (Doc. 12-2, at 97).

>Q. What? Okay. What are you doing? What were you doing during these nine years. What specifically were your jobs? Were they similar to – okay. Let's go about setting up the rigs and that? Were you doing that during these years?
>
>A. Not unless someone did not show up. If an employee didn't show up.
>
>Q. Okay. So, as an owner of the company, you were doing what?
>
>A. I did a multitude of things.
>
>Q. All right. Let's get on that. Thanks.
>
>A. Okay. I had, in 1999 got a computer in so I had a gal in the office in 2003 who did all the computer work. I would review the invoicing simply because I knew the correct materials and many times the secretary or secretaries, I ended up with three didn't know the proper materials. I talked to customers. They came in the office or I went out in the field. I had two different times that my water treatment guy quit, and I went out and did those jobs. If we needed somebody to put in a pump system, or I was requested to be onsite, I went and did that with another employee, many of whom were taught by me how to do this work. I also supervised the office. I did have a manager towards the end, an office manager. I signed all of the documents that were necessary as a business owner. I had to set up a drug and alcohol testing program for the employees in the field. I had to deal with the federal, because we drilled in Pennsylvania and New York. I had to deal with the federal DOT regs. I conducted the safety meetings for the employees. Frequently would go out, talk to the customers after the employees were done to see if the customer was happy. Did follow up. Sometimes would go out and obtain bacteria tests, in fact. And I did many shock chlorination of water wells, which ended up resulting in the fact that I cannot smell because I chlorinated the water in the well, ran it through the house, checked the faucets and fixtures by snorting the water in my nose until I could smell the chlorine. And I no longer can smell. And at that time, I also was raising two children.
>
>(Doc. 12-2, at 97-98).

Bear proceeded to describe supervisory and bookkeeping duties, however she testified to no other responsibilities related to operating a drilling rig. (Doc. 12-2, at 98-99).

Bear fails to carry her burden of establishing her past relevant work was that of a well drill operator. *See Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). Past relevant work is

13

that which the claimant, *herself*, has performed in the past. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 123 (3d Cir. 2000). Bear does not identify, nor is the Court aware of, precedent establishing that the work of a claimant's employees can be imputed to the claimant. Her assertions that "the job of drilling the well was the primary function of her company, Coudersport Well Drilling," and that "the Claimant was the owner-operator of Coudersport Well Drilling and that their business was drilling residential wells which included all the requirements of … 'Well Drill Operator,'" does not establish that Bear's past relevant work was that of a well drill operator. (Doc. 16, at 6, 8); *see* SSR 82-61 (test for the ability to perform past relevant work includes "whether the claimant retains the capacity to perform the particular functional demand and job duties peculiar to an individual job as he or she actually performed it."). Bear testified that she did not actually perform the job duties of setting up the rigs and did not mention operating drilling rigs when asked her duties. (Doc. 12-2, at 97-98). As such, substantial evidence supports the ALJ's conclusion that Bear did not perform the main duties of a well drill operator. *See* SSR 82-61. Bear fails to establish that the job she performed was that of a well drill operator rather than a will point pumping supervisor.

V.   CONCLUSION

Based on the foregoing, the Court will **AFFIRM** the Commissioner's decision, direct that **FINAL JUDGMENT BE ENTERED** in favor of the Commissioner and against Bear, and direct the Clerk of Court to **CLOSE** this case.

An appropriate order will follow.

BY THE COURT:

**Dated: August 21, 2020**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

14